IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**KIRBY TATE**                                                                                      **PLAINTIFF**

**V.**                                                            **CIVIL ACTION NO.4:08CV73-SA-DAS**

**EARNESTINE STARKS, et al.**                                                                **DEFENDANTS**

## REPORT AND RECOMMENDATION

## I.  FACTUAL AND PROCEDURAL HISTORY

Arrests in March and June of 2003 lead to Kirby Tate's conviction on four drug-related offenses.[1] He received three sixty year sentences and a sixteen year sentence. The sentences were imposed concurrently, but without eligibility for parole. He spent much of the early part of his sentence at regional facilities enjoying the relative freedoms of a B custody classification, probably the most favorable classification he could receive given his lengthy sentence. In early 2008, however, he was identified as a gang leader, reclassified to D custody, and assigned to Unit 32 in the Mississippi State Penitentiary (MSP) at Parchman, Mississippi. At the time, this was Mississippi's supermax facility. The Mississippi Department of Corrections subsequently closed that facility, but over the years, the harshness of the conditions in Unit 32 spawned not only innumerable individual prisoner complaints but several class actions. Tate was housed in this unit from March 12, 2008 until April 2, 2009.

On March 30, 2009, this court granted summary judgment as to all the plaintiff's claims, but the Fifth Circuit Court of Appeals reversed that decision. The defendants now have filed a

---

[1] He was convicted of delivery of more than an ounce, but less than a kilogram of marijuana (435.3 g) and two counts of possession with intent to sell/deliver more than an ounce, but less than a kilogram of marijuana (289.8 and 531 g) and possession of three dosage units of oxycodone. Tate also has two 1991 convictions for the sale of marijuana.

second motion for summary judgment. Tate did not respond to the motion within the time allowed by the rules, nor did he request an extension of time. Not even an after-the-fact explanation has been offered in an attempt to excuse this tardy filing. To make bad matters worse, his late response contains no affidavits, interrogatory responses, or deposition excerpts. It is full of bald assertions but largely fails to tie these references to any evidence in the record. The court denied the plaintiff's motion to supplement the response, and the defendants now have filed their reply in support of the motion.

Tate also has attempted to supplement his response to the motion for summary judgment with a cross-motion for summary judgment. This tactic, though well-conceived, was not properly executed. The motion was filed after the expiration of the motions deadline. Again there has been neither a request for additional time nor a proffered excuse for the late filing. The court therefore, *sua sponte*, struck this motion. Thus Tate has no proof submitted with his response to the latest motion for summary judgment.

This is not the only time plaintiff's counsel has been dilatory in this action. The case management orders entered in this case allowed discovery periods from July 17, 2008 to December 17, 2008, and again from August 18, 2011 until May 1, 2012. The first indication in the record of any attempt by the plaintiff to conduct discovery were deposition notices filed on Tuesday, April 24, 2012, after the defendants filed the present motion for summary judgment. Plaintiff purported to notice the depositions of Earnestine Starks and Mary Craft for the same date as the notice, beginning at 10:30 a.m. at Parchman. The depositions of Ricky Scott and Marelyn Sturdivant were noticed for Thursday, April 26, 2012. The following day – April 25, 2012 – the defendants filed a motion to stay the discovery pending a decision on the motion for

summary judgment. Also on April 25, the plaintiff re-noticed the depositions of Scott, Starks, Sturdivant and Craft, for April 30, 2012, in Tupelo, Mississippi. The plaintiff moved to strike the motion to stay, asserting that defendants had failed to cooperate or to respond to multiple e-mails and telephone calls. The motion to strike provided no indication of the time-frame or the number of attempts made to arrange depositions. None of the e-mails were attached to the motion to strike.

The undersigned takes notice of the fact that Charles Irvin and Tommy D. Goodwin, the assistant attorneys general then tasked with handling all § 1983 litigation on behalf of the State of Mississippi, were in trial before this court in *Williams v. Taylor*, civil action number 4:08CV163, on Monday, April 23, 2012 through Thursday, April 26, 2012. The undersigned further takes judicial notice that Monday, April 30, 2012 was a state holiday. It, therefore, appears from the record that the plaintiff failed to pursue discovery in a timely manner and that he did not notice these depositions sufficiently in advance to allow counsel to be available and to prepare their clients for deposition. Consequently, the undersigned reports that the motion for summary judgment is ripe for consideration, notwithstanding the plaintiff's inability to pursue this late attempt at discovery.[2]

Finally, to make matters more interesting, on January 10, 2012, Mississippi Governor Haley Barbour pardoned Tate for these four convictions. His pardon forms a portion of the basis upon which the defendants now seek dismissal of the present action. Understanding all of this,

---

[2]Unlike at the time the court considered the initial motion for summary judgment, there are a scattering of sworn pleadings and affidavits in the record filed before the response, including the plaintiff's complaint which has now been properly executed. While this court is not required to consider any evidentiary matters not specifically cited in support of, or in opposition to any motion for summary judgment, these other items in the record have been reviewed and considered in support of the plaintiff's opposition to the motion. Fed. R. Civ. P. 56(c)(3).

the undersigned recommends that the defendants' motion for summary judgment be granted in part and denied in part.

## II.  DISCUSSION

### 1. **Summary Judgment**

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgement as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial responsibility to inform the district court of the basis for its motion and identify those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id*. at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *S.E.C. v. Recile* 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at

1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Importantly, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010). The 2010 amendments to Rule 56 now make this abundantly clear. Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."

## 2. Issues Raised

Tate's complaint is less than clear. In the section addressing the exhaustion of administrative remedies, Tate enunciates three claims: 1) That 'MDOC officials' denied or interfered with his access to the courts in his habeas action(s) by confiscating and destroying legal documents; recording and monitoring telephone conversations with his attorney and censoring and confiscating mailed communications between him and his counsel; 2) the defendant Starks issued a retaliatory Rules Violation Report (RVR) to Tate; and 3) Ricky Scott and other 'MDOC' officials 'arbitrarily and capriciously validated' Tate as a Serious Threat Group (STG) leader and deprived him of any meaningful opportunity to rebut that finding.

The complaint, however, appears to make three additional claims. Tate claims that Starks and others denied him due process and failed to follow MDOC policies and procedures in the disciplinary process, resulting from the Starks-issued RVR. Tate also appears to be making a claim about the grievance procedures and the results of his grievances. Tate not only makes

5

allegations about the supposed flaws in the administrative remedies program and his results, but names defendants who have no discernible connection to this action, other than their involvement in handling those grievances. Finally, the complaint includes an allegation that the defendants have interfered with Tate's access to this court in this action.

In this second motion for summary judgment, the defendants make essentially three arguments: First, they argue that the plaintiff's claims are now moot, either because Tate has been released from Unit 32 of the Mississippi State penitentiary and/or because of his unconditional pardon and release from the custody of the Mississippi Department of Corrections. Second, they assert qualified immunity as a defense. And third, the defendants argue that the plaintiff cannot receive compensatory damages for emotional distress because he failed to allege a physical injury as required by the Prison Litigation Reform Act § 1997e (e).

There are additional issues which are apparent from the record of this case. Given the number of issues and defendants, the undersigned recommends that the other issues be addressed, *sua sponte*. The Fifth Circuit Court of Appeals has held that a district court may grant summary judgment *sua sponte* provided that the losing party is afforded proper notice and an opportunity to submit documents opposing summary judgment. *See Judwin Properties, Inc. v. U. S. Fire Insurance Co.*, 973 F.2d 432, 436 (5th Cir. 1992). With this report and recommendation, the undersigned recommends that certain defendants and certain claims be finally dismissed. Plaintiff is advised that this report and recommendation should be taken as the notice required under *Judwin*.

### 3. Whether Tate's Claims are Moot

The defendants argue that Tate's claims for declaratory judgment and injunctive relief were made moot by his transfer from Unit 32 on April 2, 2009. To the extent that the plaintiff's claims were specific to Unit 32, they are correct. The transfer of an inmate from one prison to another will render a claim for injunctive relief moot. *Beck v Lynaugh*, 842 F. 2d 759, 762(5th Cir. 1987); *Cooper v. Sheriff, Lubbock County,* 929 F. 2d 1078(5th Cir. 1991).

While the record is not as clear and detailed as it should be, it appears that Tate's classification and identification as a gang leader survived his transfer from Unit 32. Tate's subsequent reclassification, however, from Security Threat Group to Common Labor, is sufficient to render his claims for injunctive relief on STG validation procedures moot. With Tate now a free man, he clearly has no remaining stake in the procedures used to identify and isolate prison gang leaders or the renunciation procedures implemented by MDOC. "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in the outcome." *Rocky v. King,* 900 F.2d 864, 867 (5th Cir. 1990). While STG procedures may well be a live issue for other inmates, Tate lacks a personal stake in the outcome.

The undersigned recommends that the claims for injunctive relief and a declaratory judgment be dismissed as moot. The paragraphs in the request for relief that should be dismissed are paragraphs one through three; six through ten; and twelve. Paragraph eleven demands a compelled apology from Commissioner Epps for his refusal to intervene in Tate's "wrongful" validation as a Simon City Royals gang leader. This demand for relief is frivolous and should be dismissed as well.

## 4. Qualified Immunity and the Due Process Claim

The defendants also argue they are entitled to summary judgment because they are protected by the doctrine of qualified immunity. When governmental officials with discretionary authority are sued in a § 1983 action and properly raise the defense of qualified immunity, the plaintiff bears the burden of overcoming this defense. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). In order to rebut this defense the plaintiff must make two showings. There must be evidence to support a finding that the defendant's conduct constituted a violation of the plaintiff's constitutional rights and it must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).[3] Overcoming the defense of qualified immunity is no simple matter as this immunity "provides ample protection to all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If a reasonable official would be uncertain about the correct application of clearly established law to the circumstances confronting that official, qualified immunity will apply. *McClendon v. City of Columbia*, 305 F.3d 314, 332 (5th Cir. 2002) (en banc). Thus even when there is a consensus among the circuit courts of appeal about the scope of a right, qualified immunity will attach and the claim fail. *Id.* A qualified immunity defense is avoided only if the plaintiff can show that no reasonably competent official or officer could believe that their conduct was lawful. The defendants assert that the plaintiff cannot meet either of the prongs to rebut the qualified immunity defense.

In order to prevail on his procedural due process claim, the plaintiff must establish that he

---

[3] In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court retreated from its holding in *Saucier*, but only to the extent of granting lower courts the discretion to determine the order in which it would address the two prongs of the qualified immunity defense.

has been deprived of a constitutionally protected liberty interest without due process of law, and as a general rule inmates do not have a liberty interest in their custodial classifications. *Wilkinson v. Stalder,* 329 F.3d 431, 436 (5th Cir 2003). Typically an administrative segregation, such as the one imposed here for suspected gang activity, in the absence of extraordinary circumstances, does not implicate any liberty interest of the prisoner. *Pichardo v. Kinker*, 73 F.3d 612, 612-13 (5th Cir. 1996). Even proof of error in the imposition of administrative segregation will not typically constitute a "deprivation of constitutionally cognizable liberty interest." *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995).

In *Wilkinson v. Austin*, 545 U.S. 209 ( 2005), the United States Supreme Court found that Ohio inmates had a liberty interest in avoiding placement in that state's supermax prison. In *Sandin v. Connor,* 515 U.S. 472 (1995), the Court had held there could be a protected liberty interest in avoiding conditions of confinement that represented an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. While recognizing that the circuit courts of appeal had been inconsistent in determining what constitutes a *Sandin* "atypical and significant hardship," the court found the conditions in this Ohio prison were well within the baseline. In *Wilkinson* inmates in the maximum security facility were cut off from almost all human contact. Conversation from cell to cell was not merely difficult but prohibited. The light within the cell could be dimmed but remained on twenty four hours per day. Exercise was limited to one hour per day in an indoor facility. The duration of the stay was indefinite. After an initial thirty day review, further review was undertaken only on an annual basis. The placement disqualified any otherwise eligible inmate from consideration for parole. The Court found that these conditions in combination gave rise to

a liberty interest in avoiding supermax placement, a position not contested by Ohio.

There are clearly both similarities and distinctions between the conditions described in *Wilkinson* and those alleged by Tate. Both involved solitary confinement and limited exercise. *Wilkinson* does not include some of the unpleasant details that Tate alleges, though the record before the court shows more frequent post-placement reviews in Mississippi. It is at least a possibility that Tate may be able to establish a protected liberty interest. [4]

Can Tate prove that he has not received due process regarding his classification, assuming a protected liberty interest? Much of *Wilkinson* regarding the process that may be due an inmate before he can be assigned to atypically burdensome housing directly rebuts the process Tate deems necessary. While Ohio's process involved some type of summary of evidence and Tate alleges he has not been provided with any proof, *Wilkinson* does not support Tate's demand that he should have been granted a hearing, much less the assistance of counsel. Tate and his submissions are contradictory as to some of the details concerning his initial STG validation and the process by which an inmate may earn his way out of STG status. The defense has provided only limited information about the procedures used. On this record, the undersigned reports that there are triable issues of fact concerning the adequacy of the processes used in Tate's validation and resulting classification.

The undersigned, therefore, recommends that the motion for summary judgment on the qualified immunity defense be denied.

---

[4] There is also authority that would hold that conditions similar to those alleged by Tate do not give rise to a protected liberty interest. On full development of the record at trial, this conflicting authority may ultimately lead to a finding that the defendants are entitled to qualified immunity. *Hernandez v. Velasquez*, 522 F.3d 556 (5th Cir. 2008).

## 5. Physical Injury

The defendants argue that the claim for compensatory damages is barred under the terms of the Prison Litigation Reform Act.[5] In pertinent part the Act provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997 e (e). The plaintiff contends that this limitation does not apply to this case because he is no longer a prisoner. He cites no authority to support his position, but does include, as required, a footnote to directly controlling adverse authority. *See Janes v. Hernandez*, 215 F.3d 541 (5th Cir. 2000) (holding that Prison Litigation Reform Act continues to apply to an action, notwithstanding prisoner's release). Because he was a prisoner when he filed his complaint, the Act applies throughout the duration of the case.

Not only must there be a prior showing of a physical injury, but the injury must be more than a *de minimus* injury in order to support a claim for mental and emotional injury. See *Geiger v. Jowers*, 404 F.3d 371(5th Cir. 2005) (holding that requirement of physical injury as prerequisite to a claim for compensatory damages is not dependent upon the nature of the underlying constitutional claim); *Alexander v Tippah County, Mississippi*, 351 F. 3d 626 (5th Cir. 2003) (upholding dismissal of prisoners' complaint for 8th Amendment violations where nausea and vomiting were the only physical injuries alleged); *Sigler v Hightower*, 112 F.3d 191(5th Cir. 1997) (finding bruised ear that was sore and hurt for three days is *de minimus*).

---

[5] The plaintiff's complaint contains no clear request for compensatory damages for mental or emotional injury. The opening paragraph of the request for relief seeks "injunctive, compensatory and declaratory relief." Paragraph 4 demands per diem damages of one thousand dollars. Paragraph 8 demands medical evaluation and treatment for "*any* physical, mental or emotional harm ... inflicted during" Tate's time in lockdown. Both sides have proceeded in this motion as if such a request for relief has been made. This analysis likewise proceeds on the assumption this claim for relief has been adequately pled.

There is no affidavit or other admissible proof of any physical injury arising out of, resulting from or related to the alleged constitutional violations. Therefore, the undersigned recommends that summary judgment should be granted as to any claims for compensatory damages for mental or emotional suffering or injury.

### 6. Retaliation

Both sides have addressed whether the plaintiff's claims relating to retaliation and the "retaliatory" RVR issued by Starks to Tate should be dismissed. This claim is no longer part of this action. This court granted summary judgment on the issue, and the Fifth Circuit Court of Appeals upheld that portion of the decision.

### 7. Administrative Remedies Program

Tate next complains about the thoroughness, timeliness, and accuracy of the handling of his grievances. The factual allegations in the body of his complaint provide that he never received "one single meaningful response" to any of the ARPs he filed. He faults Commissioner Epps for failing to intervene on his behalf following his grievances. Plaintiff appears to be asserting a claim based on his dissatisfaction with the grievance procedure and the results of those procedures in his case. Such a claim fails as a matter of law.

> Congress requires inmates to exhaust their "administrative remedies as are available..." 42 U.S.C. § 1997e (a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has no established grievance procedure or fails to adhere to it. 42 U.S.C. 1997e (b). **The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures**."

The undersigned recommends that any claim relating to the handling of any grievances be dismissed with prejudice as legally frivolous.

### 8. Disciplinary Claims

Tate continues to complain that Starks' RVR and the finding of his guilt violate his constitutional rights to due process. As a matter of clarification, the undersigned recommends that Tate's attempt to obtain review and/or obtain any remedy as a result of the RVR be dismissed with prejudice. Federal courts do not "second-guess" the findings and determinations of prison disciplinary committees. The loss of canteen privileges and additional points simply do not implicate any protected liberty interest, so the acts about which Tate complained cannot amount to a constitutional wrong. *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Accordingly, this claim should be dismissed with prejudice.

### 9. Access to the Courts

The plaintiff has asserted a claim for denial of access to the courts, alleging interference with his habeas actions in the Southern District of Mississippi and with the prosecution of this § 1983 action. The defendants do not address these claims separately from their argument that all claims are moot. Because at least a claim for nominal damages survives, these claims cannot be dismissed as moot. Inmates must be provided only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions and conditions of confinement." *Johnson v. Rodriguez,* 110 F.3d 299, 310-11 (5th Cir. 1997) (quoting *Lewis v. Casey,* 518 U.S. 343, 356 (1996)). In order to prevail on a claim for denial of access to the courts, Tate must prove actual prejudice as a result of the denial. *See Lewis*, 518 U.S. at 356. Unless there is actual prejudice in a nonfrivolous, legal proceeding or impediment to bringing an action, there is no standing to assert a claim for a denial of access to the courts.

In keeping with the edict of the Fifth Circuit Court of Appeals, whether Tate has been denied access to the courts in the present action and/or in his habeas actions is a claim that should be tried.

## 10. Conclusions and Recommendations

1. The undersigned recommends that the defendants' motion for summary judgment be granted, in part, as follows:

    A. The plaintiff's claims for injunctive or declaratory relief should be dismissed as moot. The moot claims for relief are numbered one through three; six through ten; and twelve.

    B. Any claim for compensatory damages for mental or emotional injury should be dismissed for failure to make the required showing of a physical injury.

2. The undersigned recommends that the court should *sua sponte*:

    A. Dismiss all claims concerning the administrative remedies program.

    B. Recognize that the claims of retaliation and those relating to the "retaliatory" RVR have been dismissed in accordance with the decision of the Fifth Circuit Court of Appeals.

    C. Dismiss the due process claim regarding the RVR.

    D. Dismiss paragraph eleven of the claim for relief as frivolous.

    E. Dismiss the defendants Regina Caplers, Verlena Flagg, and Willie Fuller because their only alleged involvement in this case is in connection with the RVR claims, also recommended for dismissal.

3. The undersigned recommends that the balance of the defendants' motion for summary judgment be denied. There are disputes of material fact regarding the following issues that require trial by the court:

1. Whether Tate's due process rights were violated by his designation and/or retention as a Security Threat Group leader, his resulting reclassification and housing conditions.

2. Whether Tate was deprived access to the courts in his habeas actions or in this action.

3. Whether the defendants are entitled to qualified immunity.

4. The extent of Tate's damages, as limited above.

5. Costs and attorneys fees, should the plaintiff prevail.

The parties are referred to 28 U.S.C. 636 (b)(1) and Local Rule 72 (a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within fourteen days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1417 (5th Cir. 1996).

This the 11th day of July, 2012.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE